UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

_____

| | | |
|---|---|---|
| CRUSADER GUN GROUP, LLC | § | |
| | § | |
| | § | |
| Petitioner | § | |
| | § | |
| VS. | § | Case No. _____ |
| | § | |
| Tanarra James | § | |
| Director of Industry Operations | § | |
| Bureau of Alcohol Tobacco | § | |
| Firearms and Explosives. | § | |
| | § | |
| Respondent | § | |

## PETITION FOR JUDICIAL REVIEW

Now comes the Petitioner, Crusader Gun Group, LLC ("Crusader") by and through counsel, and for its Petition for Judicial Review of Respondent's January 13, 2022 Final Notice of Denial of Application, Revocation., Suspension and/or Fine of Firearms License, states as follows:

1. This is a petition for de novo judicial review of the Denial of a federal license as a dealer in firearms other than destructive devices, and this action is being timely brought pursuant to 18 U.S.C. 923(f)(3) and its related regulations.

## PARTIES

2. Petitioner, Crusader Gun Group, LLC is a limited liability with its principal place of business in Houston, Texas. The responsible person of Petitioner is Alan Aronstein.

3. Respondent, Tanarra James ("DIO James") the Director of Industry Operations of the Houston Field Division of the Bureau of Alcohol Tobacco Firearms and Explosives (" ATF") is an individual who may be given notice of this suit by delivering a summons to her at her principal place of business located at 5825 North Sam Houston Parkway, West Suite 300 Houston, Texas 77086.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. 1331, as it arises under the Constitution and laws of the United States., specifically 18 U.S.C. 923(t)(3), et seq, and its related regulations.

5. Venue is proper in the Southern District of Texas, as Crusader's principal place of business is located within the district in Houston, Texas.

## FACTS

6. On or about November 20, 2020, Alan Aronstein as the principal person, submitted an Application for Federal Firearms License ("FFL") on behalf of Crusader Gun Group, LLC. ("Crusader") A copy of Crusader's FFL application marked Exhibit 1 attached hereto is incorporated by reference.

7. A Notice to Deny Application for License Dated April 27, 2021 was sent by ATF notifying Crusader that it's Federal Firearms License ("FFL") as a dealer was being denied.

8. Crusader timely requested an administrative hearing with respect to the

denial of its FFL pursuant to 18 U.S.C. 923(f)(2), and a hearing was held in Houston. Texas on November 16. 2021.

9. On January 18, 2022, Crusader received the Final Notice of Denial of Federal Firearms License from DIO James (the "Final Notice") dated January 13, 2022. A copy of the Final Notice marked Exhibit 2 is incorporated by reference

10.     The Final Notice sets forth certain purported findings of fact and conclusions of law regarding DIO James' denial of Crusader's FFL with respect to among other things alleged violations of the Gun Control Act of 1968 ("GCA") and whether such alleged violations were committed willfully by the Applicant's responsible person, Alan Aronstein.

11.     Alan Aronstein categorially denies the facts set forth in Exhibit 2 and avers that the conclusions are erroneous because the conclusion denying Crusader's FFL were based upon haphazard facts and conclusions reported from a 2010-2011 ATF inspection (the "2011 Inspection") in connection the intent to revoke the FFL licenses of three companies all identified below.

COUNT I
DENIAL OF FREEDOM OF INFORMATION REQUEST

12.      Paragraphs 1-11 are incorporated as if restated in full herein

13.     On May 11, 2021, upon receiving Crusader's notice of denial of a FFL, a freedom of Information ("FOIA") request was sent to the U.S.

Department of Justice for records concerning a Federal Firearms License denial for Crusader Gun Group, LLC.

14.      On September 27, 2021 the request, assigned 2021-0529, was denied. A copy of the denial marked Exhibit 3 attached hereto is incorporated by reference.

15.      Response to Crusader's FOIA was critical to prepare to defend its denial of a FFL because the foundation of DIO James' denial of Crusader's FFL was a compliance inspection taken over several months in the 2011 Inspection that involved three companies identified in the next paragraph.

16.      At the time 2011 Inspection, Alan Aronstein was president and Director of the three companies named, (a) Tex-Products Inc.,(FFL License 5-76-00154) (b) High Standard Manufacturing Company, Inc. (FFL license 5-76-36527), and (c) Firearms International, Inc. (FFL license 5-76-00160)

17.      Alan Aronstein was the principal person for Tex-Products Inc., and Firearms International Inc.

18.      Dick Fiqua, James F. Gray and others were the principal persons for High Standard Manufacturing Company, Inc.

19.      On August 17, 2011, after the 2011 Inspection, ATF issued a Notice of Revocation of license to (a) Tex-Products Inc. (FFL License 5-76-00154), (b) High Standard Manufacturing Company, Inc. (FFL license 5-76-

36527)), and (c) Firearms International, Inc. (FFL license 5-76-00160) (the "2011 Inspection")

20.    After initially requesting a hearing on the Notice to Revoke, attorney Allen Halbrook of the law firm of Sneed, Vine & Perry advised ATF, in a letter dated November 9, 2012, that Tex Products and two other entities (High Standard Manufacturing Company, Inc. (Federal Firearms License 5-76-36527) and Firearms International, Inc. (Federal Firearms License 5-76-00160), had ceased operations requiring a Federal firearms license and were surrendering their licenses. The applications for renewal were withdrawn.

21.    The three licenses were surrendered in compliance with the November 9, 2012 letter.

22.    At the request of Dick Fuqua, Allan Offringa, a retired senior ATF special agent with over 35 years of service, submitted a critique of the Notice of Licensee Revocation and Supporting documents. A partial copy of Mr. Offringia's Critique marked Exhibit 4 attached hereto is incorporated by reference. (the "Offringa Critique")

23.    Nevertheless, Mr. Offringa's Critique along with the report to which the critique refers should be among the documents produced in response to Crusader's FOIA.

24.    The Department of Justice's refusal to comply with Crusader's FOIA prevented Mr. Aronstein from preparing for and defending Crusader's

denial of a FFL.

25.     By way of comparison, The Office of Inspector general (OIG) Results in Brief: "Over the 59-month period we tested, 76 weapons and 418 laptop computers were lost, stolen, or missing from ATF. ATF's rate of weapons loss per month has nearly tripled since Treasury's 2002 audit, and the rate of loss per month for laptop computers was 50 times higher than what the 2002 audit revealed. According to ATF officials, the much higher rate of laptop computer losses resulted primarily from adjustments ATF made to its inventory records to correct inaccurate data accumulated over several years. We also found serious deficiencies in ATF's response to these lost, stolen, or missing items. ATF staff did not report many of the lost, stolen, or missing weapons and laptop computers to ATF's Internal Affairs Division (Internal Affairs), as required by ATF's property management policies. In addition, ATF did not report most of the missing laptop computers to ATF Internal Affairs for investigation. We also☐ found that ATF staff did not enter 5 lost, stolen, or missing weapons into NCIC and did not document what data was contained on 398 of the 418 lost, stolen, or missing laptop computers. Consequently, ATF could not provide assurance that these computers did not contain sensitive information, personally identifiable information (PII), or classified information. Because ATF did not begin to install encryption software on its laptop computers until May 2007, few if any of the laptop computers lost, stolen, or

missing during our review period were protected."[1]

'

Count II
FAILURE TO CONDUCT HEARING ACCORDING TO ATF GUIDELINES

26.       Paragraphs 1-11 are incorporated as if restated in full herein

27.       According to the ATF pamphlet entitled explanation of the hearing process, (the "Explanation") "A hearing officer will be selected who has no prior knowledge of your case and has had no interactions with you or your licensed operations. In most cases, the assigned hearing officer will come from outside the ATF field division in which your licensed business is located."

28.       While the hearing officer assigned to the 2011 Investigation did not participate in the hearing on November 16, 2021, Tanarra James took over the 2011 Investigation by being assigned the DIO of the ATF for the Houston Office and was the person that conducted the hearing on November 16, 2021. Furthermore, on January 18, 2022, she signed the denial of the FFL license to Crusader.

29.       The Explanation goes on to state: "At the conclusion of the government's presentation, you will have the opportunity to respond. Make sure you state your caste as clearly and factually as possible. The case you

---

[1] Quoted from THE BUREAU OF ALCOHOL, TOBACCO,  FIREARMS AND EXPLOSIVES' CONTROLS OVER ITS WEAPONS,  LAPTOP COMPUTERS, AND OTHER  SENSITIVE PROPERTY  U.S. Department of Justice Office of the Inspector General  Audit Division Audit Report 08-29  September 2008

present will receive the same consideration by the hearing officer as the government's case. Be willing and prepared to address each violation described in the Notice you received."

30.     The government's exhibits admitted over Crusader's objections were primarily from the 2011 Inspection. Crusader was unable to address the violations presented because the government was withholding documents that would have allowed Crusader to address each violation.

31.     In spite of the DOJ's refusal to comply with Crusader's FOIA, there was not scintilla of evidence presented at the hearing on November 16, 2021 that Alan Aronstein willingly violated the GCA.

32.     Furthermore, Item 12 of Exhibit 2 states, "Tex-products is a willful violator of the GCA for the reasons described herein." Based upon this conclusion, the ATF **_IMPUTED_** (emphasis mine) the willful violations of Tex-Products to Alan Aronstein. There is no provision in the GCA that imputes violations of the GCA by a company to the responsible person. Furthermore, there was no evidence introduced at the hearing that showed that Alan Aronstein willfully violated the GCA.

33.     Nevertheless, the Offringa Critique clearly concludes that ninety-five percent of the findings and conclusions reported in the 2011 investigative report inaccurate.

34.     In addition, from the tone of the Offringa Critique, the inspectors

for the 2011 Inspection was grossly inept, disorganized and opinionated resulting in findings and conclusions that were erroneous and not justified.

35.     Crusader avers that the facts and conclusions relied upon from the 2011 Inspection during the November 2021 hearing and the facts reported therefrom are erroneous and do not justify the conclusions reached when asserting that Mr. Aronstein willingly violated the GCA. Hence, the foundation of the denial of Crusader's FFL should not be based upon the facts and conclusions of the 2011 Inspection but should be disregarded thereby reversing the ATF decision to deny Crusader's FFL and the Court should order the ATF to grant Crusader's FFL.

Count III
KNOWINGLY AND UNLAWFULLY POSSESSING MACHINE GUNS
IN VIOLATION OF 18 U.S.C. § 922(0)

36.     Paragraphs 1-11 are incorporated as if restated in full herein

37.     Exhibit 2 item 10 states that Alan Aronstein also previously violated the GCA by knowingly and unlawfully possessing machine guns ("M16') in violation of 18 U.S.C. § 922(0)

38.     This fact stated in Exhibit 2 Item 10 is erroneous.

39.     The GCA Section 925 provides the following. Exceptions: Relief from disabilities "(a) (1) The provisions of this chapter shall not apply with respect to the transportation, shipment, receipt, or importation of any firearm or ammunition imported for, sold or shipped to, or issued for the use of, the

United States or any department or agency thereof or any State or any department, agency, or political subdivision thereto."

40.     The contract documents marked Exhibit 6 attached and incorporated by reference contain the following documents:

    a. Email transmitting contract
    b. Subcontract Agreement between Lockheed Martin Integrated Systems, Inc. and FedSys, Inc.
    c. Order For Supplies or Services
    d. United States of America Nontransfer and Use Certificate
    e.  Invoice for the lower M16 receivers from the Century International Arms, Inc. bonded warehouse.

41.     M16 receivers, (U.S. Government property) were withdrawn from a bonded warehouse pursuant to the above contract.

42.     Pursuant to ATF regulations, the term M16 was entered into the accusations and disposition book.

43.     A M16 and a M4 use the identical receiver. Therefore, a M16 receiver can be used to convert this receiver into a M4 weapon.

44.     The M16 is a rotating bolt rifle with a gas-operated direct impingement firing action. The M4 is a variant of the M16.

45.     About 80% of the M4 is based on M16 parts, making these weapons somewhat interchangeable and reducing new manufacturing costs. Although the cartridge remains the same between the two, the jacketing and powder mix have been modified to increase firing speed and impact profile. Barrel length can be modified with an extendable stock. At present, other

modifications to the M4 design are still in progress, responding to both current needs and anticipated future needs of the U.S. and NATO forces.

46.     After M16 receiver was converted to the M4's weapon, the receiver still had the M16 imprint; nevertheless, the weapons were in fact M4's.

47.     Consequently, it is immaterial whether the weapons were M16's or M4's because being property of the United States Government, the GCA and thus the ATF had no jurisdiction over these weapons.

48.     On page 185 line 24 of the transcript of the hearing, the ATF admitted that there was a U. S. Governmenet contract for a M4.

49.     The M4's were identified by the inspectors in the 2011 Inspection as M16's because the inspectors were not sufficiently educated to identify a M4 after a M16 receiver was converted to a M4.

50.     The Offringa Critique mentions that Mr. Aronstein answered several questions presented by the inspectors but his answers were ignored.

51.     Crusader re-avers that the facts and conclusions relied upon from the 2011 Inspection during the November 2021 hearing and the facts reported therefrom are erroneous and do not justify the conclusions reached when asserting that Mr. Aronstein willingly violated the GCA. Hence, the foundation of the denial of Crusader's FFL should not be based upon the facts and conclusions of the 2011 Inspection but should be disregarded thereby

reversing the ATF decision to deny Crusader's FFL and the Court should order the ATF to grant Crusader's FFL.

Count IV
POSSESSED UNSERIALIZED FRAMES

52.     Paragraphs 1-11 are incorporated as if restated in full herein

53.     Exhibit 2 item 10 states that (Alan Aronstein) possessed unserialized frames, which he knew were firearms in violation of 18 U.S.C. § 923(i) and 27 CFR § 478.92.

54.     This fact stated in Exhibit 2 Item 10 is erroneous.

55.     Alan Aronstein may have possessed unserialized frames but those frames were not in violation of 18 U.S.C. § 923(i) and 27 CFR § 478.92.

56.     18 U.S.C. § 923(i) as enacted today is as it was in 2011 which states: "Licensed importers and licensed manufacturers shall identify by means of a serial number engraved or cast on the receiver or frame of the weapon, in such manner as the Attorney General shall by regulations prescribe, each firearm imported or manufactured by such importer or manufacturer."

57.     27 CFR § 478.92 as enacted today is as it was in 2011 which states: 1. FIREARMS. You, as a licensed manufacturer or licensed importer of firearms, must legibly identify each firearm manufactured or imported as follows...

58.     The three companies involved in the 2011 Inspection were neither

**MANUFACTURERS NOR IMPORTERS** of the firearms in question.

59.     Consequently, those frames were not in violation of 18 U.S.C. § 923(i) and 27 CFR § 478.92 because the unserialized frames were purchased by a third party at an auction conducted by a bank that had foreclosed upon its security interest in those frames.

60.     The frames in question were acquired from that third party and were not manufactured nor imported by the licensee in question.

61.     Quoting the Offringa's Critique, Exhibit 4: "In one violation the verbiage in one regulation was changed to accommodate a violation. Alan Aronstein acquired a large group of firearms frames through an auction. There is a question as to whether they are frames however; ATF forced this company to place serial numbers on these frames. It is not this company's responsibility to place serial numbers on another company's firearm."

62.     Further quoting the Offringa Critique: "The only way this company can ever recover the integrity of their records is to have several full time employee spend a year plus, gather every document in the office and line by line with the acquisition and disposition and movement of every firearm, page and line, and enter them into a computer."

63.      Crusader re-avers that the facts and conclusions relied upon from the 2011 Inspection during the November 2021 hearing and the facts reported therefrom are erroneous and do not justify the conclusions reached when

asserting that Mr. Aronstein willingly violated the GCA. Hence, the foundation of the denial of Crusader's FFL should not be based upon the facts and conclusions of the 2011 Inspection but should be disregarded thereby reversing the ATF decision to deny Crusader's FFL and the Court should order the ATF to grant Crusader's FFL.

Count V<br>REPORTING LOSS OR THEFT OF GUNS

64.    Paragraphs 1-11 are incorporated as if restated in full herein

65.    Exhibit 2 item 10 states that (Alan Aronstein) failed to report theft or loss of over 200 missing guns in violation of 18 U.S.C. § 923(g)(6) and 27 CFR § 478.39a.

66.    The facts stated in Exhibit 2 Item 10 are erroneous.

67.    The Offringa Critique disputes the fact that is replete with erroneous theft, loss or missing gun findings.

68.    Crusader re-avers that the facts and conclusions relied upon from the 2011 Inspection during the November 2021 hearing and the facts reported therefrom are erroneous and do not justify the conclusions reached when asserting that Mr. Aronstein willingly violated the GCA. Hence, the foundation of the denial of Crusader's FFL should not be based upon the facts and conclusions of the 2011 Inspection but should be disregarded thereby reversing the ATF decision to deny Crusader's FFL and the Court should order

the ATF to grant Crusader's FFL.

Count VI

WILLFUL FAILED TO DISCLOSE A MATERIAL FACT

69.     Paragraphs 1-11 are incorporated as if restated in full herein.

70.     On January 28, 2021, ATF Industry Operations Investigator ("IOI") Elaine Mata conducted a qualification inspection of Crusader's application.

71.     Exhibit 2 footnote 2 states: The Amended Notice of Denial also included an allegation that Applicant willfully failed to disclose a material fact in its Application for Firearms License, in violation of 18 U.S.C. § 923(d)(l )(D) and 27 CFR § 478.47(b)(4). Based on testimony provided at the hearing, the government is not relying on this allegation in reaching its decision to issue this Final Notice. Whether the government is relying upon this fact is immaterial, this fact and resulting conclusion is patently false.

72.     Referring to Exhibit 1, Item 20 as initially submitted shows that Mr. Aronstein stated that he never personally held A FFL license.

73.     This fact is true.

74.     At the insistence of Ms. Mata, he was instructed to change his answer to yes but noted that the license number was unknown. In addition, if he had personally held a FFL, the ATF should have had his application with license number. Furthermore, if he personally, held a FFL these documents should be produced in compliance with the FOIA.

75.    Nevertheless, when submitting this change to item 20, he submitted an explanation to Ms. Mata that stated that he never personally held a FFL license but he was president of several companies where he was the responsible person. A copy of that explanation marked Exhibit 5 attached hereto is incorporated by reference.

76.    Therefore, if the FFL application submitted by Mr. Aronstein failed to disclose a material fact, the failure is the result of the instructions from Elaine Mata, the ATF Industry Operations Investigator.

77.    Crusader avers that the bios exhibited during the November 2021 hearing and the facts and conclusions resulting therefrom are erroneous. The denial of Crusader's FFL should be reversed and the Court should order the ATF to grant Crusader a FFL.

Count VII
VIOLATIONS IMPUTED TO RESPONSIBLE PERSON.

78.    Paragraphs 1-11 are incorporated as if restated in full herein

79.    Exhibit 2 Paragraph 12 states: Tex-Products is a willful violator of the GCA for the reasons described herein. Alan Aronstein was the sole responsible person for Tex-Products when it willfully committed all of the violations detailed at the November 2021 hearing described herein. Applicant Crusader Gun Group now seeks a licensee with Alan Aronstein as its sole responsible person. The prior willful violations of the GCA by Tex-Products are imputed to its sole responsible person, Alan Aronstein, and therefore Applicant

is not qualified to receive a new license under 18 U.S.C. § 923(d)(l)(C).

80.     The cases cited by the ATF do not support their argument that violations of the GCA by Tex-Products are imputed to Alan Aronstein.

81.     Furthermore, there no provisions of the GCA that imputes violations by a company to the responsible person.

82.     In every case cited by the ATF, the license holder was given repeated warnings before the license was either revoked or denied reissuance. As will be set forth later, Alan Aronstein has never been ever accused of violating the GCA. Thus, Mr. Aronstein has never received such a warning.

83.     Crusader re-avers that the facts and conclusions relied upon from the 2011 Inspection during the November 2021 hearing and the facts reported therefrom are erroneous and do not justify the conclusions reached when asserting that Mr. Aronstein willingly violated the GCA. Hence, the foundation of the denial of Crusader's FFL should not be based upon the facts and conclusions of the 2011 Inspection but should be disregarded thereby reversing the ATF decision to deny Crusader's FFL and the Court should order the ATF to grant Crusader's FFL.

## Count VIII
### WILLFUL VIOLATIONS OF THE GCA

84.     Paragraphs 1-11 are incorporated as if restated in full herein

85.     Exhibit 2 Paragraph 11 states in pertinent part: Pursuant to 18

U.S.C. § 923(d)(l)(C), ATF may deny an application for a federal firearms license if the applicant has previously willfully violated the GCA. In *Fairmont Cash v. James,* 858 F.3d 356 (5th Cir. 2017), the court explained willfulness as it applies to the regulatory provisions of the GCA:

> "A license holder commits a willful violation under § 923 if the licensee knew of his legal obligation and purposefully disregarded or was plainly indifferent to the record-keeping requirements. Additionally, a violation is willful if the licensee has been informed of the regulations, warned of violations, and continually violates those requirements. Furthermore, knowledge of the particular regulation violated is not required so long as the licensee disregarded a known legal obligation. Section 923 does not require evidence of a "bad purpose" or "evil motive" in order to support a showing of willfulness. "Factors tending to establish 'willfulness' as a matter of law include (1) a licensee's proven knowledge of its record keeping obligations, (2) persistent failure 'to comply with ... the same or similar' provisions, and (3) receipt of a warning letter 'advising [the licensee] that repeated violations of the regulations could result in the revocation of its license.' ""[W]here a licensee understands his or her legal obligations under the GCA, yet fails to abide by those obligations, his or her license can be denied or revoked on the basis that the dealer 'willfully' violated the GCA" Id. at 362."

86.    There is no evidence that Alan Aronstein purposefully disregarded or was plainly indifferent to the record-keeping requirements. The Offringa Critique along with the report to which the critique refers completely dispels any claim that Alan Aronstein purposefully disregarded or was plainly indifferent to the record-keeping requirements[2].

87.    Exhibit 2 paragraph 9 states in pertinent part: "Alan Aronstein had

---

[2] See Exhibit 3

been associated with Federal firearm licenses since 1973." Hence, the ATF presented no evidence at the hearing in November that Mr. Aronstein was previously given written warnings that his activities as a responsible person were violating GCA and any further violations could cause his companies FFL that to be revoked or not renewed. Here again, if such warnings exist, they should have been produced in response to the FOIA.[3]

88.     There is no evidence that Alan Aronstein has been warned of violations, and continually violated those requirements. This is a fact that further dispels willful violations of the GCA by Mr. Aronstein.

89.     While Mr. Aronstein is a licensee's proven knowledge of its record keeping obligations, there is no evidence that he has persistently failed 'to comply with ... the same or similar' provisions, and has never received a warning letter 'advising him that repeated violations of the regulations could result in the revocation of its license.'

90.     While Alan Aronstein is the applicant for a FFL license as the responsible party for Crusader, he understands his legal obligations under the GCA. Nevertheless Mr. Aronstein has never failed to abide by those obligations, therefore, his license should not be denied because there is no evidence that he 'willfully' violated the GCA.

---

[3] See Exhibit 2

91.     Exhibit 2 paragraph 9 further states "When he was given the Reports of Violations in 2011, Mr. Aronstein signed as the only responsible person for Firearms International, High Standard and Tex Products and did not dispute the violations". This purported document was not introduced into evidence at the November hearing but if it exists, it was withheld by the DOJ when denying Aronstein's freedom of information Request.[4] .

92.     Crusader re-avers that the facts and conclusions relied upon from the 2011 Inspection during the November 2021 hearing and the facts reported therefrom are erroneous and do not justify the conclusions reached when asserting that Mr. Aronstein willingly violated the GCA. Hence, the foundation of the denial of Crusader's FFL should not be based upon the facts and conclusions of the 2011 Inspection but should be disregarded thereby reversing the ATF decision to deny Crusader's FFL and the Court should order the ATF to grant Crusader's FFL.

Count IX
ACQUISITION AND DISPOSITION ERRORS

93.     Paragraphs 1-11 are incorporated as if restated in full herein

94.     Exhibit 2 paragraph 8 states: Testimony was given that the three companies had over 6,000 acquisition and disposition book errors and gave numerous examples of both.

---

[4] See Exhibit 3

95.     The fact stated in Exhibit 2 Item 8 is erroneous.

96.     Mr. Offringa's Critique along with the report to which the critique refers completely refutes this fact.[5]

97.     This is another fact that could have been disputed if the DOJ had complied with the FOIA.[6]

XII
TRACING ERRORS

98.     During the course of the hearing in November 2021, testimony and documents were introduced that there were a substantial number of tracing errors.

99.     This fact was not reported in the final denial. Nevertheless, if it would have been, this fact would have been false.

100.     The Offringa Critique states the following concerning gun tracing to the National Tracing Center: "Records are kept by the company of traces made for the ATF National Tracing Center. To date this company has not had a firearm made by this company that could not be traced."

XIII
Conclusion

101.     The facts and conclusions relied upon from the 2011 Inspection

---

[5] See Exhibit 4
[6] See Exhibit 2

during the November 2021 hearing and the facts reported therefrom are erroneous and do not justify the conclusions reached when asserting that Mr. Aronstein willingly violated the GCA. Therefore, the foundation of the denial of Crusader's FFL should not be based upon the facts and conclusions of the 2011 Inspection but should be disregarded thereby reversing the ATF decision to deny Crusader's FFL and the Court should order the ATF to grant Crusader's FFL.

WHEREFORE, Crusader respectfully requests that this Honorable Court enter judgment in its favor and against DIO James, declare that sufficient grounds for denying Crusader's FFL do not exist, declare that Alan Aronstein is a qualified responsible person, order that the Final Notice is rescinded, order that Crusader's FFL be granted by the ATF, award costs, reasonable attorney fees, and any further relief deemed just and appropriate

Respectfully submitted,

/s/G. P. Matherne
G. P. Matherne
Attorney at Law
P. O. Box 547
Spring, Texas 77383-0547
713 827-1702 Telephone
281 353-2651 Fax
TBA 13186300
legistgpm@iclouss.com
Attorney for Alan Aronstein