United States District Court
Southern District of Texas
**ENTERED**
August 17, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CRUSADER GUN GROUP, LLC, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:22-CV-00906 |
| § | |
| TANARRA JAMES, § | |
| § | |
| Defendant. § | |

## **MEMORANDUM OPINION AND ORDER**

### I. INTRODUCTION

Pending before the Court is the respondent's, Tanarra James, Director of Industry Operations at the Bureau of Alcohol, Tobacco, Firearms and Explosives (hereinafter "ATF"), motion for summary judgment (Dkt. No. 29). The petitioner, Crusader Gun Group, LLC, ("Crusader") has filed a response and a cross-motion for summary judgment (Dkt. No. 35). The respondent has filed a reply in support of its summary judgment motion that doubles as a response to the petitioner's cross-motion (Dkt. No. 40). After reviewing the motions, the pleadings, the record, and the applicable law, the Court determines that the respondent's motion should be **GRANTED** and the petitioner's motion should be **DENIED**.

### II. FACTUAL BACKGROUND

Crusader is a would-be firearms business whose application for a Federal Firearms License ("FFL") was denied by ATF. Crusader now appeals this denial.

Crusader applied for an FFL on November 20, 2020, listing Alan Aronstein as its president and sole responsible person. During the standard qualification inspection, ATF noted that this was not Aronstein's first FFL application. Aronstein was also the designated responsible person for three other firearms businesses: Tex-Products, High Standard Manufacturing, and Firearms International. All three applied for and received FFLs in 2000. On each application, Aronstein identified himself as the sole responsible person for the proposed firearms operations and acknowledged that he was responsible for ensuring that his firearms business complied with federal regulations.

In 2008, ATF inspected Aronstein's businesses. ATF found that the three businesses, operating under Aronstein's exclusive control, willfully committed thousands of violations of federal firearms laws and regulations—specifically, the Gun Control Act, 18 U.S.C. § 923(g)(1)(A). These included over 6,000 record-keeping errors; failure to report the theft or loss of over 200 firearms; knowing possession of eight unlawful machine guns; and failure to serialize firearms frames. ATF deemed these violations willful because Aronstein had been in the firearms business for decades, he had been instructed regarding record-keeping requirements several times, and ATF had discussed corrective actions with him regarding recordkeeping violations in 2008 and 2009. Nevertheless, some of the record-keeping violations discovered in 2010 were repeat violations from the 2008 and 2009 inspections.

ATF decided to revoke Tex-Products' FFL. ATF granted Tex-Products multiple continuances before Tex-Products failed to appear for the hearing it requested. In

November of 2012, Tex-Products' attorney informed ATF that all three of Aronstein's businesses ceased operating and they surrendered their FFLs. This left Tex-Products' revocation uncontested.

Eight years later, Aronstein decided to reenter the firearms business by creating Crusader Gun Group, LLC. ATF determined that Aronstein's thousands of willful violations through Tex-Products disqualified Crusader from an FFL as long as Aronstein remained in control. When ATF issued its Notice to Deny, Crusader requested a hearing. ATF issued an amended Notice to Deny, adding allegations that Crusader made a false statement on the license application and failed to disclose material information.

At the hearing in November of 2021, ATF presented 61 exhibits which were accepted and incorporated into the administrative record. Crusader offered no exhibits and presented no witnesses, but Crusader's attorney cross-examined ATF's witnesses and offered a closing statement. In January of 2022, ATF issued a Final Notice of Denial setting forth its findings and conclusions, deciding that Aronstein willfully violated federal firearms laws and regulations while operating Tex-Products. Reasoning that a history of willful noncompliance with the GCA disqualifies a responsible person from new FFLs even when they are sought under a new business entity, ATF decided that Aronstein's previous violations disqualified Crusader's application. Crusader now appeals ATF's decision.

## III. CONTENTIONS OF THE PARTIES

ATF argues that summary judgment is appropriate because the only question present is whether ATF's denial was authorized by law. ATF's justification for its denial has three steps: 1) Aronstein's former business committed thousands of violations; 2) Aronstein is the responsible person of the former businesses and Crusader; 3) therefore, the former violations are attributable to Crusader. ATF argues that any other interpretation would allow violators to easily subvert the GCA.

Crusader objects to the first and third steps.[1] Crusader retorts that Aronstein's former businesses and Crusader are separate entities, and it is therefore improper to attribute one entity's violations to another just because Aronstein is the responsible person in common. Additionally, Crusader argues that ATF violated Crusader's Fourteenth Amendment rights by 1) failing to provide a fair hearing and 2) failing to produce exculpatory documents.

## IV. STANDARD OF REVIEW

*A. Summary Judgment*

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to meet its burden to show the existence of an essential element of its case. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine issue

---

[1] It is unclear to what extent Crusader objects to the first step: "The facts and conclusions resulting from the compliance inspection conducted for the license holders in 2010 through 2011 are undeniably disputed;" Dkt. No. 35, Page 14. "Petitioner does not dispute Respondent's summary of Aronstein's firearms history and it will not be repeated here." *Id.*

as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is material only if its resolution would affect the outcome of the action . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted) (quoting *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000)). When determining whether a genuine issue of material fact exists, the court must construe "all facts and inferences . . . in the light most favorable to the nonmoving party." *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003).

The movant bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. If the movant meets its burden, the burden shifts to the nonmovant to "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 343 F.3d 401, 405 (5th Cir. 2003).

### B. Appeal of ATF's Denial

The Court reviews the denial of an FFL application *de novo*. 18 U.S.C.A. § 923 (f)(3) (West). The Court's review is limited to the question of whether the denial is authorized by law. *Weaver v. Harris*, 486 F. App'x 503, 505 (5th Cir. 2012) (citing *Stein's, Inc. v. Blumenthal,* 649 F.2d 463, 464 n.2 (7th Cir.1980)). "A single willful violation authorizes the ATF to revoke the violator's FFL, regardless how severe,

though the frequency and severity of the violations can be relevant to willfulness." *Fairmont Cash Mgmt., L.L.C. v. James*, 858 F.3d 356, 362 (5th Cir. 2017). The Court may weigh ATF's assessment of the evidence and the agency's legal conclusions as it deems appropriate. *Id.* (citing *Arwady Hand Trucks Sales, Inc. v. Vander Werf*, 507 F. Supp. 2d 754, 758 (S.D. Tex. 2007)).

V. **ANALYSIS & DISCUSSION**

Before the Court determines whether ATF's decision is authorized by law, the Court must address preliminary matters, including alleged Fourteenth Amendment violations and the so-called "Offringa Critique."

A. *Crusader's Fourteenth Amendment Claims Fail*

ATF did not violate Crusader's Fourteenth Amendment rights by giving Crusader an "unfair" hearing. First, Crusader did not bring a due process claim in its First Amended Petition (Dkt. No. 15). Crusader mentioned this claim for the first time in its response brief to ATF's motion to stay discovery (Dkt. No. 31). Second, this Court's review is both *de novo* and limited to whether the ATF's decision was authorized by law. *Weaver v. Harris*, 486 F. App'x 503, 505 (5th Cir. 2012). This review is independent of the procedural fairness of the hearing, which is outside the scope of the Court's review.[2] The Court has the information before it to complete its sole task—determining whether the ultimate decision was authorized by law.

---

[2] "[T]he ATF hearing is not a formal, adversary hearing to which the APA standards apply." *Arwady Hand Trucks Sales, Inc. v. Vander Werf*, 507 F. Supp. 2d 754, 760 (S.D. Tex. 2007).

Substantively, Crusader's due process argument fails. Crusader argues that the respondent has a "pecuniary interest in the outcome of the administrative hearing because she was the investigator who made the decision to deny a FFL to Crusader, she is the respondent in this proceeding and she is the judge/jury who needed to affirm her decision to deny a FFL to Crusader." Dkt. No. 35. First, none of that even hints at a pecuniary (monetary) relationship. Second, it is unclear whether Crusader means Director James herself, or ATF at large, when Crusader writes "she." If Crusader means Director James, the argument fails because it was ATF investigator Elaine Mata—not Director James—who investigated Crusader. If Crusader means ATF, the argument still fails because administrative agencies are permitted to conduct hearings. *Mathews v. Eldridge*, 424 U.S. 319 (1976).

Crusader's argument that ATF violated Crusader's Fourteenth Amendment rights by failing to hand over "all reports, records, [and] electronic correspondence" related to Crusader's investigation fares no better. The administrative record in this case is voluminous, replete with reports and records. When Crusader requested ATF's investigative report, ATF produced it with limited redactions and a *Vaughn* index explaining the applicable exemptions. Indeed, no other documents have been identified as responsive and undisclosed. It is therefore unclear exactly what documentation Crusader still desires. Regardless, the Court repeats that its review is both *de novo* and limited to whether ATF's decision was authorized by law. *Weaver v. Harris*, 486 F. App'x 503, 505 (5th Cir. 2012). The Court has sufficient documentation to make this determination.

### B. The "Offringa Critique" Does not Create a Factual Dispute

Crusader's only evidence contravening the administrative record's documentation of thousands of violations of the Gun Control Act is a document allegedly created by Allan Offringa, a retired senior ATF special agent. The so-called "Offringa Critique" does not create a genuine issue of material fact. Crusader does not allege that Offringa was present at the ATF inspection, a witness at the administrative hearing, or otherwise had any personal knowledge of the relevant events other than reading ATF's Notice of Licensee Revocation. Offringa's thoughts and reflections upon ATF's investigation do not create an issue of material fact.

### C. ATF's Decision Is Authorized by Law

The Court may now proceed to the substance of the case. Title 18 U.S.C. § 923(d)(1)(C) permits ATF to deny a license to an applicant who previously committed willful violations of the GCA. The question at the heart of this appeal is whether "applicant" includes the "responsible person" of the corporation. For purposes of the GCA, a responsible person is "any individual possessing, directly or indirectly, the power to direct or cause the direction of the management, policies, and practices of [a] corporation, partnership, or association, insofar as they pertain to firearms." *Gossard v. Fronczak*, 206 F. Supp. 3d. 1053, 1061 (D. Md. 2016). In other words, the responsible person is the person responsible for the firearms. Crusader does not dispute that Aronstein is the responsible person of Crusader, as he was for his three former business entities. Nonetheless, Crusader insists that any record keeping errors were "the responsibility of the license holder and not Aronstein." Dkt. No. 15.

Crusader interprets "applicant" in 18 U.S.C. § 923(d)(1)(C) narrowly, excluding the responsible person. This cannot be correct. Contextual statutory language, absurd results, and case law all confirm ATF's view that a business entity's violations are attributable to that entity's responsible person, especially when that person exercises significant or sole control over the company.

First, 18 U.S.C. § 923(d)(1)(A) lists as a criterion for approval that "the applicant [be] twenty-one years of age or over." This supports the argument that Congress contemplated "applicants" as including individuals. It is difficult to imagine why Congress would desire a business entity to exist for 21 years before applying for an FFL; it is more straightforward when applied to a human being. In any event, Crusader cannot argue the contrary because it is not yet 21 years old itself.

Second, Crusader's view would gut the entire federal firearm licensing scheme. Corporate officers whose businesses were denied FFLS due to serious violations could simply create new business entities with clean slates and no prior violations. The statute would be powerless to stop them, leaving ATF to play whack-a-mole with violators of the GCA. Congress cannot have intended this result.

Third, case law agrees with ATF's interpretation. *See 2nd Amend. Guns, LLC v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, No. 1:13-CV-01947-CL, 2014 WL 7051753, at *7 (D. Or. Dec. 12, 2014) ("The company, acting through its officers, willfully violated the Act and all 'responsible persons' named on [the] license are personally accountable for those violations."); *Barany v. Van Haelst*, 459 F. App'x 587 (9th Cir. 2011) (concluding ATF was authorized to deny an FFL application to an

individual seeking to "revive" a former business whose FFL had been revoked); *Lortz, Ltd. v. Gilbert*, 451 F. App'x 503 (6th Cir. 2011) (concluding that a manager of a business applying for an FFL was himself the statutory applicant, justifying ATF's denial of an FFL renewal); *Gilbert v. Bangs*, 481 F. App'x 52 (4th Cir. 2012) (attributing a business' GCA violations to a corporate officer who later applied for an FFL in his personal capacity).

Violations of the GCA that Aronstein committed through earlier business enterprises are properly attributed to Aronstein and his new business enterprise—Crusader Gun Group. Accordingly, ATF was authorized to deny Crusader's application based upon even a single violation. *Fairmont Cash Mgmt., L.L.C. v. James*, 858 F.3d 356, 362 (5th Cir. 2017). Although Crusader seems to dispute some of the thousands of violations that ATF determined Tex-Products committed, Crusader's summary judgment brief does not even mention the thousands of record-keeping violations. These include repeated failings to record: the acquisition of approximately 2,400 pistol frames; firearms transferred between Aronstein's companies; and serial numbers and dates of acquisition of firearms.

Aronstein's repeated violations in spite of ATF's warnings and instructions show that these violations were willful. "[A] violation is willful if the licensee has been informed of the regulations, warned of violations, and continually violates those requirements." *Fairmont Cash Mgmt., L.L.C. v. James*, 858 F.3d 356, 362 (5th Cir. 2017) (citing *Arwady Hand Trucks Sales, Inc. v. Vander Werf*, 507 F. Supp. 2d 754, 761-62 (S.D. Tex. 2007)). Aronstein was instructed regarding record-keeping

requirements multiple times and was informed of necessary corrective actions, yet he repeated the same recordkeeping violations of which ATF warned him.

Crusader denies that these warnings occurred, alleging that ATF did not present evidence of pre-2011 violations at the hearing. The record shows otherwise. The administrative record contains reports of recordkeeping violations dated from 2008 and 2009. AR 000084-87. ATF introduced all three reports as exhibits and provided testimony explaining the violations described in the reports. Crusader's denials of what the record clearly shows do not create a genuine dispute of material fact. Because a single willful violation authorizes ATF to deny Crusader's application and the record reveals numerous violations, ATF's denial of Crusader's FFL was authorized by law.

## VI.    CONCLUSION

Based upon the foregoing analysis, the respondent's motion for summary judgment is hereby **GRANTED**. The Court further orders that the petitioner's cross-motion for summary judgment is hereby **DENIED**. ATF's final administrative decision denying Crusader's federal firearms license is **AFFIRMED**. A separate judgment will enter.

IT IS SO **ORDERED**.

SIGNED on August 17, 2023, at Houston, Texas.

Kenneth M. Hoyt
United States District Judge